# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| ABRAHAM KNOLL, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>ROBERT G. PHILLIPS, TIMOTHY H. DAY, J. HARDY MURCHISON, MICHAEL G. FRANCE, JOEL C. LAMBERT, VANESSA GOMEZ LAGATTA, ALVIN BLEDSOE, PHILIP D. GETTIG, JOHN W. SOMERHALDER II, CRESTWOOD MIDSTREAM PARTNERS LP, CRESTWOOD GAS SERVICES GP LLC, CRESTWOOD HOLDINGS LLC, INERGY, L.P., INERGY MIDSTREAM, L.P., NRGM GP, LLC, and INTREPID MERGER SUB, LLC,<br><br>      Defendants. | C.A. No.: |

## CLASS ACTION COMPLAINT

Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## NATURE OF THE CASE

1. Plaintiff brings this class action on behalf of the unitholders of partnership units of Crestwood Midstream Partners LP ("Crestwood Midstream" or the "Partnership") against the members of Crestwood Midstream's Board of Directors (the "Board" or the "Individual Defendants") for their breaches of fiduciary duties arising out of their attempt to sell the Partnership to Inergy, L.P. and Inergy Midstream, L.P. and its general partner, NRGM GP, LLC (collectively referred to herein as the "Buyout Group") by means of an unfair process and for an unfair price.

2. On May 6, 2013, the Buyout Group and the Partnership announced that they had entered into a series of agreements that will culminate in the Buyout Group, through Intrepid Merger Sub, LLC ("Merger Sub"), acquiring all of the outstanding units of Crestwood Midstream in a mixed cash and unit transaction. Crestwood Midstream unitholders will receive 1.070 common units of Inergy Midstream, L.P. for each unit of Crestwood Midstream they own and a one-time cash payment at closing of $1.03 per unit in cash (the "Merger"). Based on the closing price of Inergy Midstream, L.P. on May 3, 2013, the last trading prior to the announcement of the Merger, the implied value of the total consideration that the Partnership's unitholders will receive is approximately $27.29 per unit, or a total of approximately $1.61 billion.

3. The Board has breached its fiduciary duties by agreeing to the Merger for grossly inadequate consideration. As described in more detail below, given Crestwood Midstream's recent strong performance as well as its future growth prospects, the consideration unitholders will receive is inadequate and undervalues the Partnership.

4. Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock up the Merger with deal protection devices that preclude other bidders from making a successful competing offer for the Partnership. Specifically, pursuant to the merger agreement dated May 5, 2013 (the "Merger Agreement"), Defendants agreed to: (i) a strict no-solicitation provision that requires the Partnership to terminate any ongoing discussions with other potential acquirers and from pursuing any alternatives to the Merger; (ii) a provision that provides the Buyout Group with five calendar days to match any competing proposal that might arise; and (iii) a provision that requires the Partnership to pay the Buyout Group a termination fee of $50.8 million in order to enter into a transaction with a superior bidder. These provisions substantially and improperly

limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of Crestwood Midstream.

5. The Individual Defendants have breached their fiduciary duties of loyalty and due care, and the Buyout Group and Merger Sub have aided and abetted such breaches by Crestwood Midstream's officers and directors. Plaintiff seeks to enjoin the Merger unless and until Defendants cure their breaches of fiduciary duty.

## **JURISDICTION AND VENUE**

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs. Plaintiff is a citizen of New Jersey and no defendant is a citizen of New Jersey.

7. This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

8. Venue is proper in this district because Crestwood Midstream maintains its principal place of business in this district.

## **PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of units of Crestwood Midstream.

10. Crestwood Midstream is a limited partnership organized and existing under the laws of the State of Delaware. It maintains its principal executive offices at 700 Louisiana Street, Suite 2060, Houston, Texas, 77002.

11. Defendant Crestwood Gas Services GP LLC ("Crestwood GP") is the general partner of the Partnership. Importantly, as is common among publicly traded limited

3

partnerships, the Partnership is managed by Crestwood GP's directors and officers. Crestwood GP is a Delaware limited liability company.

12. Defendant Crestwood Holdings LLC is a Delaware limited liability company. First Reserve Corporation ("First Reserve") and Crestwood GP's management own 100% of Crestwood Holdings LLC. Crestwood Holdings LLC owns 100% of Crestwood GP.

13. Defendant Alvin Bledsoe has been a director of Crestwood GP since 2007. Defendant Bledsoe is a citizen of Texas.

14. Defendant Timothy H. Day has been a director of Crestwood GP since 2010. Defendant Day is a Managing Director at First Reserve and has been with the firm since 2000. Defendant Day is a citizen of Texas.

15. Defendant Michael G. France has been a director of Crestwood GP since 2010. Defendant France is a Managing Director at First Reserve and has been with the firm since 2007. Defendant France is a citizen of Texas.

16. Defendant Philip D. Gettig has been a director of Crestwood GP since 2007. Defendant Gettig is a citizen of Texas.

17. Defendant Vanessa Gomez LaGatta has been a director of Crestwood GP since 2012. LaGatta previously served as Vice President, Treasurer for Quicksilver Resources, Inc. and Vice President, Treasurer of Crestwood GP's predecessor, Quicksilver Gas Services GP LLC. Defendant LaGatta is a citizen of Texas.

18. Defendant Joel C. Lambert has been a director of Crestwood GP since 2010. Defendant Lambert is Vice President, Legal & Assistant Secretary of First Reserve and has been with the firm since 2007. Defendant Lambert is a citizen of Texas.

19. Defendant J. Hardy Murchison has been a director of Crestwood GP since 2010. Defendant Murchison was a Managing Director at First Reserve from 2001 until 2011. Defendant Murchison is a citizen of Texas.

20. Defendant Robert G. Phillips has been Chairman of the Board, President, and Chief Executive Officer of Crestwood GP since 2010 and has served as Chairman, President, and CEO of Crestwood Holdings Partners, LLC. Defendant Phillips is a citizen of Texas.

21. Defendant John W. Somerhalder II has been a director of Crestwood GP since 2007. Somerhalder is a citizen of Arizona.

22. Defendants referenced in ¶¶ 13 through 21 are collectively referred to as Individual Defendants or the Board.

23. Defendant Inergy, L.P. is a Delaware limited partnership and headquartered in Kansas City, Missouri.

24. Defendant Inergy Midstream, L.P. is a Delaware limited partnership headquartered in Kansas City, Missouri.

25. Defendant NRGM GP, LLC is a Delaware limited liability company and the general partner of Inergy Midstream, L.P.

26. Defendant Intrepid Merger Sub, LLC is a Delaware limited liability company and wholly-owned subsidiary of Inergy Midstream, L.P. that was created for the purposes of effectuating the Merger.

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons that own Crestwood Midstream units (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal

representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

28. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. According to the Partnership's most recent Form 10-Q, which it filed with the United States Securities and Exchange Commission on May 8, 2013, as of April 29, 2013, approximately 53.7 million units were represented by the Partnership as outstanding. All members of the Class may be identified from records maintained by Crestwood Midstream or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

29. Questions of law and fact are common to the Class, including:

(i) Have the Individual Defendants breached their fiduciary duties of undivided loyalty or due care with respect to plaintiff and the other members of the Class in connection with the Merger;

(ii) Have the Individual Defendants breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of plaintiff and the other members of the Class in connection with the Merger;

(iii) Have the Individual Defendants, in bad faith and for improper motives, impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Partnership or its assets;

> (iv) Whether plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated;
>
> (v) Have the Buyout Group and Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duty; and
>
> (vi) Is the Class entitled to injunctive relief or damages as a result of defendants' wrongful conduct.

30. Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

31. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

32. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class, and conflicting adjudications for individual members of the Class might, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests. Moreover, Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## SUBSTANTIVE ALLEGATIONS

### *Partnership Background and its Poise for Growth*

33. Crestwood Midstream is the successor of Quicksilver Gas Services LP. The Partnership owns, operates, acquires, and develops midstream energy assets. Crestwood Midstream owns and operates predominately fee-based gathering, processing, treating and

7

compression assets servicing natural gas producers in the Barnett Shale in north Texas, the Fayetteville Shale in northwestern Arkansas, the Granite Wash in the Texas panhandle, the Marcellus Shale in northern West Virginia, the Avalon Shale/Bone Spring in southeastern New Mexico, and the Haynesville/Bossier Shale in western Louisiana.

34. The Partnership's 2012 fiscal year, ending December 31, 2012, was successful and positioned Crestwood Midstream for near and long-term growth. In a February 26, 2013 press release announcing the Partnership's fourth quarter and full-year results, Defendant Phillips stated that the Partnership was "pleased with the results" of several successful mergers and "the continued growth of our organization to strategically reposition Crestwood [Midstream] into high growth rich gas plays."

35. Despite this transitional period, the Partnership reported strong financial results for 2012. As described in the Partnership's 2012 Annual Report, the Partnership's 2012 revenues were $239.4 million, a significant increase compared to revenues of $205.8 million in 2011. Crestwood Midstream also reported Adjusted EBITDA of $132.4 million compared to $109.9 million from the prior year.

36. Additionally, the Partnership expressed optimism about its near- and long-term business prospects. Defendant Phillips commented on Crestwood Midstream's near term business prospects in the Partnership's February 26, 2013 press release, stating that "2013 will be another transition year but will likely deliver significant improvement over 2012" and that 2013's budget "should provide substantial earnings growth visibility in 2014 and support a quicker return to our traditional 8-10% per year distribution growth objectives[.]"

37.     Defendant Phillips also touted Crestwood Midstream's long-term business prospects in his note to unitholders, dated April 4, 2013, which was included in the Partnership's 2012 Annual Report. Specifically, Phillips wrote:

> Looking forward, *energy industry experts forecast that more than $200 billion of additional midstream infrastructure will be needed to support upstream unconventional asset development over the next 20-30 years*. Having demonstrated our potential capabilities with producers, *Crestwood [Midstream] is in excellent shape to acquire a foothold in new areas and invest in Greenfield projects to meet industry demand in those areas*. (Emphasis added.)

38.     Crestwood Midstream carried its momentum into the first quarter of 2013, for the period ended March 31, 2013. In a May 7, 2013 press release, the Partnership reported total operating revenues of $72.4 million, a significant increase compared to $53.7 million from the same period of the prior year. Crestwood Midstream also enjoyed Adjusted EBITDA of $38.8 million, an 8% increase compared to the fourth quarter of 2012 and 37% higher than the first quarter of 2012. The Partnership reported that Adjusted EBITDA is on track to increase, on a quarterly basis, throughout 2013[.]"

### *The Merger Is Unfair*

39.     In a press release dated May 6, 2013, the Partnership announced that it had entered into a series of transactions that would culminate in the Buyout Group acquiring all of the outstanding Partnership units for 1.07 units of Inergy Midstream, L.P, and a one-time cash payment of $1.03 per unit. The total consideration unitholders will receive, based on the Partnership's closing unit price on May 3, 2013, which was the last trading day prior to the announcement of the Merger, would be $27.29.

40.     Given the Partnership's recent strong performance and its positioning for growth, the Merger consideration is inadequate and significantly undervalues the Partnership.

9

41. The Merger provides a meager premium of just 9% based on Crestwood Midstream's closing price on May 3, 2013, the last trading day before the Merger was announced.

42. Further, according to Yahoo Finance, at least one Wall Street analyst had a price target of $32.50 per unit.

43. Additionally, the Merger will have a significant dilutive effect on Crestwood Holdings public unitholders' interest because upon the consummation of the Merger the Partnership's public unitholders will only own approximately 24.4% of the surviving entity.

44. In addition, the Merger consideration fails to adequately compensate Crestwood Midstream's unitholders for the significant synergies created by the Merger. The Partnership's May 6, 2013 press release announcing the Merger stated that the complementary "services offered by Crestwood [Midstream] and Inergy create attractive operational and financial synergies." The same press release went on to state that the expected financial synergies will be "approximately $15 to $20 million on an annual run rate within the next 24 months."

45. Despite the significant synergies inherent in the transaction for the Buyout Group, however, the Board failed to secure a fair price for either the intrinsic value of the Partnership's assets or the value of the Partnership's assets to the Buyout Group.

46. Moreover, while the Partnership's public unitholders will receive inadequate consideration for their units, certain officers and Board members have negotiated positions for themselves in the surviving entity. As disclosed in the Partnership's May 6, 2013 press release, Defendant Phillips will act as "Chairman, President, and Chief executive officer of the combined company" and a May 6, 2013 Merger Overview presentation stated that "all key executives [are]

expected to remain in place[.]"Additionally, the board of the surviving entity will include current Crestwood Midstream Board members.

48. The Buyout Group is seeking to acquire the Partnership at the most opportune time, at a time when the Partnership is performing very well and is positioned for tremendous growth.

## *The Preclusive Deal Protection Devices*

48. In addition, as part of the Merger Agreement, Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Merger a *fait accompli* and ensure that no competing offers will emerge for the Partnership.

49. Section 6.5 of the Merger Agreement includes a "no solicitation" provision barring the Partnership from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by the Buyout Group. Section 6.5(a) demands that the Partnership terminate any and all prior or on-going discussions with other potential acquirers.

50. Pursuant to § 6.5(b) of the Merger Agreement, should an unsolicited bidder submit a competing proposal, the Partnership must notify the Buyout Group of the bidder's identity and the terms of the bidder's offer. Thereafter, § 6.5(d) demands that should the Board determine to enter into a superior competing proposal, it must grant the Buyout Group five calendar days in which the Partnership must negotiate in good faith with the Buyout Group (if the Buyout Group so desires) and allow the Buyout Group to amend the terms of the Merger Agreement to make a counter-offer so that any competing proposal no longer constitutes a "Superior Proposal."

51. In other words, the Merger Agreement gives The Buyout Group access to any rival bidder's information and allows The Buyout Group a free right to top any superior offer

11

simply by matching it. Accordingly, no rival bidder is likely to emerge and act as a stalking horse, because the Merger Agreement unfairly assures that any "auction" will favor The Buyout Group and piggy-back upon the due diligence of the foreclosed second bidder.

52. The Merger Agreement also provides that Crestwood Midstream must pay the Buyout Group a $50.8 million termination fee if the Partnership decides to pursue the competing offer, thereby essentially requiring that the competing bidder agree to pay a naked premium for the right to provide the unitholders with a superior offer.

53. Moreover, in connection with the Merger, First Reserve, who collectively owns approximately 43% of Crestwood Midstream's common units, have agreed to vote in favor of the Merger. Accordingly, 43% of Crestwood Midstream's common units are already "locked up" in favor of the Merger.

54. Ultimately, these preclusive deal protection provisions illegally restrain the Partnership's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Partnership. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative Merger that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

55. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Partnership unitholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Fiduciary Duties
### (Against all Individual Defendants)

56. Plaintiff repeats all previous allegations as if set forth in full herein.

57. The Individual Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care and loyalty owed to the unitholders of Crestwood Midstream and have acted to put their personal interests ahead of the interests of Crestwood Midstream unitholders.

58. The Individual Defendants' recommendation of the Merger will result in change of control of the Partnership which imposes heightened fiduciary responsibilities to maximize Crestwood Midstream's value for the benefit of the unitholders and requires enhanced scrutiny by the Court.

59. The Individual Defendants have breached their fiduciary duties of loyalty, good faith, and independence owed to the unitholders of Crestwood Midstream because, among other reasons:

(a) they failed to take steps to maximize the value of Crestwood Midstream to its public unitholders and took steps to avoid competitive bidding;

(b) they failed to properly value Crestwood Midstream; and

(c) they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Merger.

60. As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Crestwood Midstream's assets and will be prevented from benefiting from a value-maximizing transaction.

61. Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Merger, to the irreparable harm of the Class.

62. Plaintiff and the Class have no adequate remedy at law.

## COUNT II
### Aiding and Abetting
### (Against the Buyout Group and Merger Sub)

63. Plaintiff repeats all previous allegations as if set forth in full herein.

64. As alleged in more detail above, Defendants The Buyout Group, and Merger Sub have aided and abetted the Individual Defendants' breaches of fiduciary duties.

65. As a result, Plaintiff and the Class members are being harmed.

66. Plaintiff and the Class have no adequate remedy at law.

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A) declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

(B) enjoining, preliminarily and permanently, the Merger;

(C) in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(D) directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(E) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(F) granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

14

| | |
|---|---|
| Dated: May 23, 2013 | Respectfully submitted, |
| | |
| | *s/ Jamie J. McKey* |
| | Joe Kendall |
| | Texas Bar No. 11260700 |
| | Jamie J. McKey |
| | Texas Bar No. 24045262 |
| | **KENDALL LAW GROUP, LLP** |
| | 3232 McKinney, Ste 700 |
| | Dallas, Texas 75204 |
| | Tel: (214) 744-3000 |
| | Fax: (214) 744-3015 |
| | |
| | **LEVI & KORSINSKY LLP** |
| | Shane T. Rowley |
| | W. Scott Holleman |
| | Justin G. Sherman |
| | 30 Broad Street, 24th Floor |
| | New York, New York 10004 |
| | Tel: (212) 363-7500 |
| | Fax: (212) 363-7171 |
| | |
| | *Attorneys for Plaintiff* |

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Abraham Knoll

## DEFENDANTS
Robert G. Phillips, Timothy H. Day, J. Hardy Murchison, Michael G. France, Joel C. Lambert, Vanessa Gomez Lagatta, et al

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Harris, Texas
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jamie McKey, Kendall Law Group, LLP
3232 McKinney Avenue, Suite 700
Dallas, Texas 75204. Telephone: 214-744-3000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | | | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 370 Other Fraud | | ☐ 861 HIA (1395ff) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| | | ☐ 791 Employee Retirement Income Security Act | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/Accommodations / ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | / **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education / ☐ 550 Civil Rights | | | |
| | / ☐ 555 Prison Condition | | | |
| | / ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:
Breach of Fiduciary Duties

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 05/23/2013 | /s/ Jamie McKey |

**FOR OFFICE USE ONLY**

RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE