# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GREG PODELL, individually and on behalf of all others similarly situated, | § § § | |
| | § | CIVIL ACTION NO. _____ |
| Plaintiff, | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| | § | |
| CRESTWOOD MIDSTREAM PARTNERS, LP, CRESTWOOD GAS SERVICES GP LLC, CRESTWOOD HOLDINGS LLC, INERGY, L.P., INERGY MIDSTREAM, L.P., NRGM GP, LLC, INTREPID MERGER SUB, LLC, ROBERT G. PHILLIPS, ALVIN BLEDSOE, TIMOTHY H. DAY, MICHAEL G. FRANCE, PHILIP D. GETTIG, VANESSA GOMEZ LAGATTA, JOEL C. LAMBERT, J. HARDY MURCHISON, and JOHN W. SOMERHALDER II, | § § § § § § § § § § § § | |
| | § § | |
| Defendants. | § | |

## CLASS ACTION COMPLAINT

Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.  Plaintiff brings this shareholder class action on behalf of himself and all other public unitholders of Defendant Crestwood Midstream Partners, LP[1] to enjoin a transaction (the "Merger" or "Proposed Transaction") whereby the Company's Board of Directors (the "Board" or "Individual Defendants") has agreed to sell the Company to Defendant Inergy L.P and Inergy Midstream, L.P. and its general partner, NRGM GP, LLC (collectively referred to herein as

---

[1]  Crestwood Midstream Partners, LP ("Crestwood LP") and its General Partner, Crestwood Gas Services GP LLC ("Crestwood GP"), are herein referred to collectively as "Crestwood" or the "Company."

"Inergy") for a combination of stock and cash valued at approximately $26.26 per unit (the "Merger Consideration"), representing a total value of approximately $1.8 billion, inclusive of the assumption of debt.

2.      On May 6, 2013, Crestwood and Inergy announced that they along with various subsidiaries and related entities had entered into a definitive Agreement and Plan of Merger (the "Merger Agreement") whereby Inergy will acquire all outstanding units of Crestwood in a stock and cash transaction for a combination of $1.03 and 1.07 Inergy units per Crestwood unit.  The deal represents a mere 8% premium to Crestwood's unit price on the day prior to the announcement of the Proposed Transaction and is at, or even below, the trading price of Crestwood units in the quarters preceding the May 6, 2013 announcement.  In addition, the inadequacy of the Proposed Transaction is further supported by the fact that the price being offered for Crestwood units is well below estimates by analysts following the Company.

3.      The Individual Defendants (defined below) have agreed to sell Crestwood for an unfair price and via an unfair process designed to benefit themselves, to the detriment of Plaintiff and other public unitholders.  While the so-called disinterested members of Crestwood's Board and Crestwood GP's Conflicts Committee approved the Proposed Transaction, the process they followed was irreparably flawed and resulted in an unfair price.  A majority of the members of the Board are interested directors.  Moreover, there was no sufficient process designed to evaluate the fairness of the Proposed Transaction or otherwise empower any of its so-called disinterested directors.  The flawed process resulted in an unfair price that undervalues the Company and the Proposed Transaction is rife with conflict and should be enjoined.

4.      Plaintiff seeks equitable relief for the breaches of fiduciary duties by Crestwood's Board, and against all Defendants for aiding and abetting the Board's breaches of fiduciary duty.

In pursuing the Proposed Transaction, each Defendant has violated applicable laws by directly breaching and/or aiding and abetting breaches of fiduciary duties of loyalty and due care owed to Plaintiff and the proposed class.

5.     As described herein, the Proposed Transaction is fundamentally unfair to Plaintiff and the other public unitholders of the Company and inadequately compensates Crestwood's public unitholders for their valuable holdings in the Company.  The conduct of the members of the Board constitutes a breach of their fiduciary duties owed to Crestwood's public unitholders, and a violation of applicable legal standards governing their conduct.

6.     Despite the unreasonable and inadequate consideration offered by Inergy and contrary to their fiduciary duties, the Board acceded to Inergy's demands to ensure that no other viable bidders would emerge to top Inergy's offer and locked up the deal with onerous deal protection devices that effectively eliminate any potential auction process.

7.     The Merger Agreement includes several provisions that serve to deter competitors from topping Inergy's offer, including, *inter alia*:  (i) a "Non-Solicitation Provision" barring the Board and any Company personnel from initiating, soliciting or knowingly encouraging any inquiries regarding an alternative acquisition proposal; (ii) a requirement that the Company provide Inergy with written notice within 24 hours of its receipt of an unsolicited acquisition proposal from another party; and (iii) imposition of a termination fee of $50.8 million under specified circumstances (the "Termination Fee"), including if the Crestwood Board terminates the Merger Agreement in order to pursue an alternative superior proposal.

8.     In addition, the Individual Defendants have entered into various agreements, including a voting and contribution agreement that will preclude other bidders from stepping forward with a superior alternative proposal.  According to Schedule A of the Merger

Agreement, of the nearly 60 million units available to vote, over forty percent of the units held by Crestwood have already agreed to vote in favor of the Proposed Transaction.

9.     As set forth herein, Plaintiff seeks to enjoin Defendants from pursuing the Proposed Transaction.  In the event the Proposed Transaction is consummated, Plaintiff seeks to recover damages resulting from Defendants' wrongful conduct.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.  Plaintiff is a citizen of New York and no defendant is a citizen of New York.

11.     This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

12.     Venue is proper in this district because Crestwood Midstream maintains its principal place of business in this district.

## THE PARTIES

13.     Plaintiff Greg Podell is, and was, at all times relevant hereto, a holder of Crestwood units.

14.     Defendant Crestwood LP is a master limited partnership organized under the laws of the State of Delaware with its principal executive offices located at 700 Louisiana Street, Houston, Texas, 77002.  Crestwood is focused on owning, operating, acquiring and developing midstream energy assets and currently provides gathering, processing, treating and compression services for natural gas and natural gas liquids produced from some of the most prolific natural gas basins in North America including the Marcellus Shale, Granite Wash, Avalon Shale/Bone

Spring, Barnett Shale, Fayetteville Shale, and Haynesville Shale. Crestwood operates a diversified portfolio of midstream assets currently consisting of: 830 miles of natural gas pipeline systems; four cryogenic processing plants; three amine treating stations; five dehydration facilities; and 263,000 horsepower of compression. Crestwood trades on the New York Stock Exchange under the symbol "CMLP."

15.     Defendant Crestwood GP is the general partner of Crestwood LP which is owned and managed by Crestwood Holdings, LLC, ("Crestwood Holdings") a partnership between the Crestwood management team led by Defendant Robert G. Phillips and First Reserve Corporation ("First Reserve"), the sponsor of Crestwood GP.

16.     Defendant Crestwood Holdings is a Delaware limited liability company.  First Reserve and Crestwood GP's management own 100% of Crestwood Holdings.  Crestwood Holdings owns 100% of Crestwood GP.

17.     Defendant Inergy, L.P. is a limited partnership organized under the laws of Delaware, with its principal place of business at Two Brush Creek Blvd., Kansas City, Missouri 64112.  Inergy trades on the New York Stock Exchange under the symbol "NRGY."

18.     Defendant Inergy Midstream, L.P. ("Inergy Midstream") is a limited partnership organized under the laws of the State of Delaware with its principal offices located at Two Brush Creek Blvd., Kansas City, Missouri, 64112.  According to published reports, Inergy engages in acquiring, owning, developing, and operating midstream energy assets.  Inergy Midstream trades on the New York Stock Exchange under the symbol "NRGM."

19.     Defendant NRGM GP, LLC is a Delaware limited liability company and the general partner of Inergy Midstream.

20.     Defendant Intrepid Merger Sub, LLC ("Merger Sub") is a Delaware limited liability company and wholly-owned subsidiary of Inergy Midstream that was created for the purposes of effectuating the Merger.

21.     Defendant Robert G. Phillips, ("Phillips") has served as Chairman, President and chief executive officer ("CEO") of Crestwood GP since October 2010 and Crestwood Holdings since 2007.  Phillips will act as Chairman, President and CEO of the combined company once the Merger has been consummated.

22.     Defendant Alvin Bledsoe ("Bledsoe") has been a member of Crestwood GP's Board since 2007.  Bledsoe chairs the Audit Committee and is also a member of the Conflicts Committee.  Bledsoe is a citizen of Texas.

23.     Defendant Timothy H. Day ("Day") is a managing director of Crestwood and has been a member of Crestwood GP's Board since 2010.  Day is a member of the Company's Management Committee.  Day is a citizen of Texas.

24.     Defendant Michael G. France ("France") is a managing director of Crestwood and has been a member of Crestwood GP's Board since 2007.  France is a member of the Company's Management Committee.  France is a citizen of Texas.

25.     Defendant Philip D. Gettig ("Gettig") has been a member of Crestwood GP's Board since 2007.  Gettig Chairs the Company's Conflicts Committee and is a member of the Audit Committee.  Gettig is a citizen of Texas.

26.     Defendant Vanessa Gomez LaGatta ("LaGatta") has been a member of Crestwood GP's Board since 2012.  LaGatta is a citizen of Texas.

27.     Defendant Joel C. Lambert ("Lambert") has been a member of Crestwood GP's Board since 2010.  Lambert is a citizen of Texas.

28. Defendant J. Hardy Murchison ("Murchison") has been a member of Crestwood GP's Board since 2010. Murchison is a citizen of Texas.

29. Defendant John W. Somerhalder II ("Somerhalder") has been a member of Crestwood GP's Board since 2007. Somerhalder is a member of the Company's Audit and Conflicts Committees. Somerhalder is a citizen of Arizona.

30. The Crestwood directors identified above are referred to herein as the "Individual Defendants." The Individual Defendants, Crestwood LP, Crestwood GP, Crestwood Holdings, Inergy and Merger Sub are collectively referred to herein as the "Defendants."

31. Crestwood GP and each of the Individual Defendants owe Crestwood's public unitholders the highest duty of loyalty, honesty, and care in conducting its affairs in a lawful manner. Each is required to consider its own interests subservient those of the public unitholders if and when a conflict arises between them. Furthermore, each has a duty to protect the Company and its public unitholders from persons or events that could violate or threaten to violate the unitholders' rights. The Individual Defendants breached their fiduciary duties to Crestwood's public unitholders by causing or participating in the wrongful acts described herein.

32. Each of the Individual Defendants, by reason of his/her management position and/or membership on the Board, is a controlling person of Crestwood and has the power and influence, and exercised the same, to cause Crestwood to engage in the wrongful practices complained of herein.

33. By reason of the positions which they occupy, the Individual Defendants are in possession of information concerning the financial condition and prospects of the Company, and especially the true value of the Company and its assets, which they have not adequately disclosed to Crestwood's public unitholders.

34.     In addition, as a result of the wrongful conduct complained of herein, the Individual Defendants have and continue to breach their fiduciary duties of candor, care, loyalty, good faith and fair dealing.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons that own Crestwood common units (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

36.     The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. According to the Crestwood's most recent 10-Q, which it filed with the United States Securities and Exchange Commission ("SEC"), as of April 29, 2013 approximately 53.7 million units of Crestwood common stock were represented by the Company as outstanding. All members of the Class may be identified from records maintained by Crestwood or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

37.     Questions of law and fact are common to the class, including:

    a.     whether the Individual Defendants have breached their fiduciary duties of undivided loyalty or due care with respect to plaintiff and the other members of the Class in connection with the Proposed Transaction;

b.      whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other Class members in connection with the Proposed Transaction;

c.      whether the Individual Defendants, in bad faith and for improper motives, impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets;

d.      whether Plaintiff and the other members of the Class will be irreparably damaged if Defendants are not enjoined from continuing the conduct described herein, or alternatively, whether they have suffered compensable damages;

e.      whether the Individual Defendants are engaging in self-dealing in connection with the Proposed Transaction;

f.      whether the Individual Defendants are unjustly enriching themselves and other insiders or affiliates of Crestwood;

g.      whether the consideration payable to Plaintiff and the Class under the Proposed Transaction is unfair and inadequate; and

h.      whether Inergy aided and abetted the Individual Defendants' breaches of fiduciary duty.

38.      Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the

Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

39. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

40. Preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate because Defendants have acted, or refused to act, on grounds generally applicable and causing injury to the Class.

## SUBSTANTIVE ALLEGATIONS

### Crestwood's Prospects for Long-Term Growth Are Excellent

41. Crestwood is a company that primarily engages in the gathering, processing, treating, compressing, transporting, and selling of natural gas in the United States. Crestwood has experienced strong financial performance over the past several quarters and the Proposed Transaction does not reflect the true value of Crestwood's financial success in the price being paid to Crestwood's public unitholders.

42. On May 8, 2012, Crestwood announced its first quarter 2012 results. According to the Company, Crestwood's first quarter 2012 EBITDA totaled $28.4 million, a 38% increase from the first quarter 2011. The Company further reported a 22% increase in distributable cash flow and an increase in operating revenues from $32.4 million for the first quarter 2011 to $53.7 million for the first quarter of 2012. The Company also revised upward its Full-Year Guidance

for 2012 Adjusted EBITDA to a range of $135 million to $140 million, an expected 10% increase in 2012 distribution to unitholders.  Along with the Company's results, Defendant Phillips commented:

> Starting in the second quarter, the recently acquired Marcellus Shale assets will provide Crestwood with greater exposure to volumes from liquids-rich development areas and will make a meaningful contribution to our remaining 2012 performance.  The combination of the return of wells shut-in during the first quarter, new wells coming on-line beginning in the second quarter, and three quarters of contribution from CMM supports our revised full year 2012 guidance.
>
> * * *
>
> In the last quarter, we increased distributions paid to unitholders to $0.50 per common unit, up 14% compared to first quarter 2011, with a strong 1.2 times coverage for the last four quarters.  This continued growth in distributions is a result of Crestwood's successful acquisition strategy over the past 18 months and reflects the benefits of the close collaboration between First Reserve, the sponsor of our general partner, and Crestwood management.  We continue to look for accretive investment opportunities that will expand our current platform or transform Crestwood into a stronger competitor throughout the midstream value chain.

43.     Thereafter, on August 6, 2012, Crestwood announced its second quarter 2012 results.  In addition, Crestwood announced that acquisition of assets from subsidiaries of Devon Energy Corp. is expected to be completed by the third quarter of 2013.  While the Company reported flat operating performance due to slower development activity and lower gas prices, Defendant Phillips reiterated the Company's strong financial outlook.  According to Defendant Phillips:

> The Granite Wash play is finally improving for us with current volumes up approximately 40% from the second quarter 2012 average due to recent well additions, with another 2 to 3 wells expected by year-end based on producer drilling plans and infrastructure requests . . . In addition, we announced a definitive agreement for another important rich gas acquisition immediately after the quarter.  The acquisition from Devon is the type of bolt-on acquisition that we have been seeking since acquiring the Barnett Shale assets in 2010.  Importantly, we completed a very successful equity offering last week which will allow us to fund the Devon acquisition while maintaining our conservative balance sheet and ensuring adequate liquidity going forward.  The Devon acquisition, Granite Wash

expansion and increasing distributions from the CMM joint venture will be important growth drivers for the remainder of 2012.

44.     On November 6, 2012, Crestwood reported record Adjusted EBITDA and adjusted distributable cash flow in its third quarter 2012 results. According to the Company, Crestwood experienced an increase of 12% from the second quarter 2012, on Adjusted EBITDA of $32.0 million. The Company also reported record adjusted distributable cash flow of $25.2 million, up 22% from the $20.6 million reported for the second quarter 2012. Along with the Company's successful financial performance, Defendant Phillips commented:

> We are pleased to deliver record Adjusted EBITDA and adjusted distributable cash flow in the third quarter as each of our business segments showed improvement over the second quarter of 2012 . . . . In general, we saw increased drilling activity in all of our operating areas except the dry gas areas of the Barnett Shale and the Haynesville/Bossier Shale. Our 2012 rich gas acquisitions, the Antero Marcellus assets and the Devon Barnett assets, added significantly to our third quarter results and should continue to contribute sequential growth in future quarters based on current producer drilling and development plans. We continue to look for bolt-on acquisitions around our existing assets and opportunities to expand our rich gas exposure through organic development projects or diversifying acquisitions.

45.     Crestwood's announcement of successful financial results and strong financial outlook continued into 2013. On February 26, 2013, the Company announced Crestwood's fourth quarter and full year 2012 financial and operating results. According to the Company, Crestwood reported Adjusted EBITDA of $119.3 million for the year ended December 31, 2012, a 9% increase over 2011. The Company also reported improved liquidity and a 4% increase of adjusted distributable cash flow of $91.2, from the same period in 2011. The Company further reported that it was positioned for strong future growth from, among other things, liquid-rich basins through the acquisition of approximately $560 million of gathering, processing and compression assets. Along with the Company's financial results and operating outlook, Defendant Phillips commented:

When looking back at 2012, we are pleased with the results of several highly successful acquisitions and the continued growth of our organization to strategically reposition Crestwood into high growth rich gas plays … To counter the impact of declining natural gas prices and the challenge of increasing valuations in the midstream M&A market, our 2012 achievements, including the strong entry into the Marcellus Shale, timely and accretive bolt-on acquisitions and the start-up of a highly talented business development team provided a near-term and long-term pivot opportunity for Crestwood in 2012.

The immediate result is a dramatic shift to rich gas volume growth in our overall portfolio supported by stronger producer drilling activity in the rich gas plays and improved growth visibility via substantial Marcellus contracted organic capital spending and additional bolt-on acquisition opportunities. With a full year contribution from the 2012 acquisitions and expected volume growth in the Marcellus Shale, we believe 2013 will be another transition year but will likely deliver significant improvement over 2012 as our 2013 guidance reflects. Importantly, Crestwood's record organic capital expenditures forecasted in our 2013 budget should provide substantial earnings growth visibility in 2014 and support a quicker return to our traditional 8-10% per year distribution growth objectives.

46. On May 7, 2013, just a day after the Proposed Transaction was announced, Crestwood announced its first quarter 2013 financial and operating results. As with previous quarters, the Company reported increases in key financial indicators over the first quarter of 2012. According to the Company, Crestwood reported a 37% increase in Adjusted EBITDA and a 28% increase in adjusted distributable cash flow from the first quarter of 2012. Along with the first quarter results, Defendant Phillips commented:

We are pleased with our first quarter results, with each of our operating segments performing in-line with our expectations.

* * *

We are also excited about the transactions we announced yesterday – a series of definitive agreements that Crestwood Holdings and the Partnership have entered into with Inergy, L.P. and Inergy Midstream, L.P., including an Agreement and Plan of Merger with Inergy Midstream, L.P. We encourage you to read yesterday's press release and investor presentation describing those transactions and we look forward to working toward completion of those transactions.

47.     In addition to Crestwood's strong financial and operating outlook, the Merger Consideration is inadequate from a financial point of view.  In fact, the deal price of approximately $26.26 represents only an 8% premium to Crestwood's trading price at the time of the announcement and 30 days prior to the announcement.  Such a premium is at the very bottom of premiums for comparative deals in the same valuation range and industry sector.

48.     The Merger Consideration being offered in the Proposed Transaction is also well below the various price target estimates by analysts following the Company.  As reported by *Yahoo Finance*, the medium and mean target prices published by analysts are $29.00 and $28.44 respectively, with a high target price of $32.50.  Furthermore, of the ten analysts following Crestwood, six of them had recommendations of strong-buy or buy.  Clearly, the market believed that Crestwood was poised to reach prices that were well above the Merger Consideration being offered in the Proposed Transaction.

### The Proposed Transaction

49.     On May 9, 2013, Crestwood filed the Merger Agreement with the SEC on Form 8-K, announcing that Crestwood and Inergy had entered into the Proposed Transaction.  According to the Merger Agreement, each common unit of Crestwood then issued and outstanding and held by members of the Class will be converted into the right to receive 1.07 Inergy units and a one-time payment of $1.03 in cash.  A portion of the cash payment will be paid by Crestwood Holdings pursuant to a payment agreement as described in the Merger Agreement and a portion will be paid by Inergy.  Crestwood's unitholders will receive cash in lieu of any fractional Inergy units.

50.     Crestwood GP's Board and the Conflicts Committee of the Board have approved the terms of the Merger Agreement and will submit the Merger Agreement to a vote of the

Crestwood unitholders. Crestwood's Board has also recommended that the unitholders vote to adopt the Merger Agreement.

51. In addition, according to the May 6, 2013 joint press release Defendant Phillips will act as Chairman, President and Chief Executive Officer of the combined company. The executive management team, which is expected to include senior executives from both companies, will be announced upon the completion of the merger. The combined companies' newly constituted Boards of Directors will include representatives from both Crestwood and Inergy.

## The Proposed Transaction Unfairly Deters Competing Offers

52. The structure of the Proposed Acquisition unreasonably and unfairly restricts the Company from soliciting competitive offers for the Company and eliminates a market check on Inergy's offer.

53. Concurrently with the execution of the Merger Agreement, on May 5, 2013, Crestwood and Inergy entered into the following voting and contribution agreements that work to preclude other bidders from stepping forward with a superior alternative proposal:

*Voting Agreement*

In connection with the Merger, on May 5, 2013, Crestwood, Crestwood Holdings, CGSH, Crestwood GP, Inergy Midstream, Inergy, L.P., Inergy GP, and Merger Sub entered into a Voting Agreement (the "Voting Agreement") pursuant to which Crestwood Holdings, CGSH and Crestwood GP agreed, among other things and subject to the terms of the Voting Agreement, to vote all of their respective units of Crestwood in favor of the approval and adoption of the Merger Agreement and the Merger.

54.     As set forth in Schedule A to the Merger Agreement, the voting agreement entered into by Crestwood provided that over 25.8 million units have already been committed to vote in favor of the Merger.

**SCHEDULE A**

**Existing Units**

| Name | Ownership |
|------|-----------|
| Crestwood Gas Services GP LLC | 137,105 Common Units |
| Crestwood Gas Services Holdings LLC | 6,190,469 Class D Units |
| | 17,210,377 Common Units |
| Crestwood Holdings LLC | 2,333,712 Common Units |

55.     In addition, the Merger Agreement provides for the following contribution agreement which further precludes the possibility of a superior offer by other bidders.

*Inergy GP Purchase and GP Contribution*

On May 5, 2013, Crestwood Holdings, CGSH, Inergy, L.P. and Inergy GP, LLC ("NRGY GP"), a Delaware limited liability company, entered into a Contribution Agreement (the "Contribution Agreement") pursuant to which CGSH will contribute all the limited liability company interests of Crestwood GP to Inergy, L.P. in exchange for 35,103,113 common units of Inergy, L.P. and 4,387,880 subordinated units of Inergy, L.P. (the "GP Contribution"). The closing of the GP Contribution is subject to, among other conditions, the closing of the indirect purchase of NRGY GP by Crestwood Holdings pursuant to a separate agreement entered into on May 5, 2013 (the "Inergy GP Purchase").

56.     In addition to the coercive nature and harmful deal protection devices enumerated above, Section 8.6(a) of the Merger Agreement imposes a $50.8 million termination fee, or approximately 3% of the total value of the Proposed Transaction, on Crestwood's public unitholders in the event that either Crestwood or Inergy terminates the Merger Agreement. This amount is punitive and discourages acceptance of a higher offer from a competing bidder. Conversely, it is very telling that the Merger Agreement does not require Inergy to pay a reciprocal termination fee to Crestwood under any circumstances.

16

57.     Lastly, Section 6.5 of the Merger Agreement requires Crestwood to immediately cease any current discussions of acquisition, and prohibits it from soliciting or entertaining any new offers (the "Non-Solicitation Provision"), thus preventing Crestwood's unitholders from maximizing the full value of their investment in the Company.  Section 6.5(a)-(b) of the Merger Agreement sets forth:

**SECTION 6.5 Non-Solicitation; Change in Recommendation**

(a)  The MLP Parties shall, and shall cause their respective Subsidiaries and shall use their reasonable best efforts to cause their respective Representatives to, immediately cease and terminate any solicitation, discussions or negotiations with any Person that may be ongoing with respect to or that may reasonably be expected to lead to an MLP Takeover Proposal.

(b)   The MLP Parties shall not, and shall cause their respective Subsidiaries and shall use their reasonable best efforts to cause their respective Representatives not to, directly or indirectly, (i) initiate, solicit, knowingly encourage or knowingly facilitate (including by way of furnishing information) any inquiries regarding, or the making or submission of any proposal or offer that constitutes an MLP Takeover Proposal (*provided* that the nothing in this Agreement shall prohibit any of the MLP Parties or their Representatives from informing any Person of the provisions of this Section 6.5 or from contacting any Person or group of Persons who has made an MLP Takeover Proposal after Execution date solely to request the clarification of terms and condition thereof to determine whether the MLP Takeover Proposal is, or could reasonably be expected to lead to, a Superior Proposal); (ii) conduct or participate in any discussions or negotiations regarding any MLP Takeover Proposal; (iii) furnish to any Person any non-public information or data relating to MLP or any of its Subsidiaries or afford access to the business, properties, assets, or, except as required by Law or the MLP Partnership Agreement, books or records of MLP or any of its Subsidiaries in any such case in connection with an MLP Takeover Proposal; or (iv) approve or recommend, or propose to approve or recommend, or allow any MLP Group Entity to execute or enter into, any letter of intent, memorandum of understanding, agreement in principle, merger agreement, acquisition agreement, option agreement, joint venture agreement, partnership agreement or other similar agreement constituting or related to, or that is intended to lead to any MLP Takeover Proposal (other than a confidentiality agreement permitted to be entered into by, and in accordance with, the next sentence).

## CLAIMS FOR RELIEF

## COUNT I

### Claim for Breach of Fiduciary Duties Against the Individual Defendants

58.     Plaintiff repeats and realleges each and every allegation set forth herein.

59.     The Individual Defendants have violated the fiduciary duties owed to the public unitholders of Crestwood and have acted to put their personal interests ahead of the interests of Crestwood unitholders or acquiesced in those actions by fellow Individual Defendants.  The Individual Defendants have failed to take adequate measures to ensure that the interests of Crestwood's unitholders are properly protected and have embarked on a process that avoids competitive bidding and provides Inergy with an unfair advantage by effectively excluding other alternative proposals.

60.     By the acts, transactions, and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, will unfairly deprive Plaintiff and other members of the Class of the true value of their Crestwood investment.  Plaintiff and other members of the Class will suffer irreparable harm unless the actions of these Defendants are enjoined and a fair process is substituted.  These harmful acts include, inter alia, failing to disclose material information concerning the Proposed Transaction, agreeing to the more than $50.0 million termination fee, as well as agreeing to the restrictive Non-Solicitation Provision contained in the Merger Agreement.

61.     The Individual Defendants' recommendation of the Proposed Transaction will result in change of control of the Company which imposes heightened fiduciary responsibilities to maximize Crestwood's value for the benefit of the unitholders and requires enhanced scrutiny by the Court.

62.     The Individual Defendants have breached their duties of candor, loyalty, fairness, good faith, and care by not taking adequate measures to ensure that the interests of Crestwood's public unitholders are properly protected from overreaching by Inergy.

63.     By reason of the foregoing acts, practices, and courses of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

64.     As a result of the actions of the Individual Defendants, Plaintiff and the Class have been, and will be, irreparably harmed in that they have not, and will not, receive full and fair value for their ownership interest in Crestwood's stock and businesses.

65.     Unless enjoined by this Court, the Individual Defendants will continue to breach the fiduciary duties owed to Plaintiff and the Class and may consummate the Proposed Transaction to the disadvantage of the public unitholders, without providing sufficient and material information necessary to enable Crestwood's public unitholders to intelligently decide whether or not to vote their units in favor of the Proposed Transaction.

66.     The Individual Defendants have engaged in self-dealing, have not acted in good faith to Plaintiff and the other members of the Class, and have breached, and are breaching, fiduciary requirements to the members of the Class.

67.     Plaintiff and members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which these actions threaten to inflict.

## COUNT II

## Claim for Aiding and Abetting Against All Defendants

68.     Plaintiff repeats and realleges each and every allegation set forth herein.

69. The Individual Defendants breached their fiduciary duties to the Crestwood unitholders by the actions alleged above.

70. Such violations of law and breaches of fiduciary duties could not, and would not, have occurred but for the conduct of Defendants, who aided and abetted the breaches of the Individual Defendants' fiduciary duties to Plaintiff and the Class through entering into the Proposed Transaction.

71. Defendants had knowledge that they are and were aiding and abetting the Individual Defendants' breaches of their fiduciary duties to Crestwood unitholders.

72. Defendants rendered substantial assistance to the Individual Defendants in their breaches of their fiduciary duties to Crestwood unitholders.

73. As a result of Defendants' wrongful conduct, Plaintiff and the other members of the Class have been, and will be, damaged in that they have been, and will be, prevented from obtaining a full and fair price for their Crestwood units.

74. As a result of the unlawful actions of Defendants, Plaintiff and the other members of the Class will be irreparably harmed in that they will be prevented from obtaining the full and fair value of their equity ownership in the Company. Unless enjoined by the Court, Defendants will continue to aid and abet the Individual Defendants' violations and breaches of their fiduciary duties, and will aid and abet a process that inhibits the maximization of unitholder value and the disclosure of material information.

75. Plaintiff and the other members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from immediate and irreparable injury which Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Declaring this action to be a proper class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Declaring that Defendants have breached their fiduciary duties, or aided and abetted such breach, to Plaintiff and the Class;

C.     Declaring that the Proposed Transaction was entered into in breach of Defendants' fiduciary duties and is therefore unlawful and unenforceable;

D.     Preliminarily and permanently enjoining Defendants and all those acting in concert with them from consummating the Proposed Transaction until such time that the Individual Defendants have adequately undertaken all appropriate and available methods to maximize unitholder value and remove any conflict of interest that has clouded the process and the Individual Defendants' judgment;

E.     In the event that the Proposed Transaction is consummated, rescinding the Merger, and/or awarding actual and punitive damages to Plaintiff and the Class;

F.     Awarding Plaintiff his fees and expenses in connection with this litigation, including reasonable attorneys' and experts' fees and expenses; and

G.     Granting such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

DATED:  May 30, 2013.

Respectfully submitted,


_____/s/ Thomas E. Bilek_____

Thomas E. Bilek
TX Bar No. 02313525 / SDTX Bar No. 9338
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, Texas  77002
Tel: (713) 227-7720
Fax: (713) 227-9404

Joseph H. Weiss
Richard A. Acocelli
James E. Tullman
**WEISSLAW LLP**
1500 Broadway, 16th Floor
New York, NY  10036
Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*